**2**  GERARD MIGLIONICO, Respondent, v BOVIS LEND LEASE, INC., et al., Appellants. [851 NYS2d 48]—

Order, Supreme Court, New York County (Debra A. James, J.), entered May 2, 2007, which granted plaintiff's motion for summary judgment as to liability on his Labor Law § 240 (1) cause of action, affirmed, without costs.

In August of 2002, plaintiff was employed as a journeyman carpenter by Sorbara Construction, Inc. at the AOL/Time Warner Center construction site. Defendants Columbus Centre and The Related Companies were the owners of the premises and defendant Bovis Lend Lease was the general contractor. On the morning of August 8, plaintiff was working on the 39th floor with another carpenter, Christopher Morelli, clamping perimeter columns. That process involves placing metal clamps around wooden column forms so that they do not collapse when they are filled with cement. The clamps, each weighing approximately 20 to 30 pounds, are placed at 10- to 16-inch intervals from the bottom to the top of the form.

In order to reach the upper portions of the column, plaintiff and Morelli stood on the clamps that they had already secured. Near the middle of the form, plaintiff attempted to hand a clamp around the form to Morelli and fell to a wooden platform five stories below, sustaining serious injuries. Plaintiff and his partner were not wearing harnesses or using any other safety devices.

Plaintiff commenced this action asserting claims under Labor Law § 240 (1), § 241 (6) and § 200. He moved for partial summary judgment on his section 240 (1) claim, solely on the issue of liability. In support of the motion, plaintiff's expert provided an affidavit stating that defendants' failure to provide plaintiff with safe elevation devices or personal fall protection "was a departure from good and accepted construction safety standards and a substantial factor in causing this accident." In addition to the failure to provide a harness, lanyard, perimeter protection (netting or guardrails) or a secured ladder or scaffold, plaintiff's expert opined, "Defendants had a non-delegable duty to provide Mr. Miglionico with . . . an appropriately 5,000 pound tested anchorage point. This accident would not have occurred had these devices, which the Defendants were obligated to provide, [been] in fact provided."

The expert opinion was supported by the deposition testimony of plaintiff's coworkers and Bovis's Site Safety Plan for the Time Warner project. Specifically, the safety manual states that

"[l]anyards and vertical lifelines shall have a minimum breaking strength of 5000 pounds" and that the anchorage points "for fall arrest devices are to be capable of supporting at least 5000 pounds per employee." In addition, Bovis's incident investigation report lists the primary cause of the accident as "[n]o fall protection."

Another carpenter on the Time Warner site, Robert Ramirez, testified at his deposition that he was not required to attend a safety class before he started work clamping columns and that the carpenters at this job site routinely did not wear harnesses. He further stated that, even if they did wear harnesses, there was no anchor point to which a harness could be attached. Specifically, he noted that there was neither a cable nor an eyebolt on the 39th floor to which the harness could have been fastened.

Likewise, Morelli testified that he was never provided with any type of harness or lifeline and that there was no perimeter protection on the 39th floor. Morelli also stated that there was no adequate place to which the carpenters could anchor themselves had they been wearing harnesses. Morelli testified that they were working on a "temporary makeshift floor" that was in the process of being built and that there was not any structure or item of sufficient stability to which they could anchor that would hold the necessary 5,000 pounds.

In opposition, defendants produced their own expert and several fact witnesses. Defendants' expert, Howard Edelson, stated that Sorbara provided fall protection devices to all its employees, and site managers for both Sorbara and Bovis instructed the employees to tie off to column rebars. Notably, while Edelson opined that plaintiff's accident was not caused by the violation of Labor Law § 240 (1), nowhere does he state that the accident would have been prevented if plaintiff had properly used the safety equipment that was allegedly provided by the employer or if he had tied off to the column rebars. Rather, he stated only that "there is no causation between the absence of [safety] railing and the plaintiff's fall."

Defendants also provided the testimony of several fact witnesses. Site safety manager Michael Tierney testified that, in general, a worker could have attached a harness to anchor points such as a hook in the floor or a cable around the column. He was unfamiliar with the condition of the 39th floor at the time of the accident and could not remember if there was a hook in that floor at any point. He also stated that the workers could have attached harnesses to the column they were working on or that they could have built a scaffold. Site safety manager

Robert Wright also testified at his deposition that "[t]here is always an anchorage point." However, he could not remember any specific anchorage points on the 39th floor. He did state that the appropriate anchorage point would have been the horizontal support beams located behind the columns.

Defendants also provided several affidavits from other employees at the site, stating that all employees were provided with harnesses and other appropriate safety equipment, that safety devices were kept on each floor, and that both an initial safety orientation for the project and weekly safety meetings were held.

Supreme Court granted plaintiff's motion for summary judgment on the issue of liability. The court found that plaintiff established a prima facie case that defendants' failure to provide him with safety devices caused his injuries and that defendants failed to raise an issue of fact whether plaintiff had been provided with any safety devices or safety training.

The function of Labor Law § 240 (1) "is to protect workers and to impose the responsibility for safety practices on those best situated to bear that responsibility" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500 [1993]). In addition, the Court of Appeals has observed that "the statute is to be construed as liberally as may be for the accomplishment of the purpose for which it was . . . framed" (*id.* [citations and internal quotation marks omitted]). In order for liability to be imposed under this section, the owner or contractor must fail to provide appropriate safety devices, and that lapse must be the proximate cause of plaintiff's injuries (*Robinson v East Med. Ctr., LP*, 6 NY3d 550, 554 [2006]). Conversely, if the worker's own actions constitute the sole proximate cause of his or her injuries, the owner or contractor will not be held liable under the statute (*id.*).

Here, as the dissent points out, there is a significant factual dispute as to whether proper fall protection devices either were available on site or were provided directly to plaintiff. However, this factual dispute is not determinative since defendants failed to rebut plaintiff's expert proof establishing that, even if harnesses were provided, there was not an appropriate anchorage point to which they could have been attached. The statute requires defendants to provide safety devices that will "give proper protection" to the employee (Labor Law § 240 [1]). Even assuming the harnesses had been provided, the only conclusion supported by this record is that they would not have provided the necessary protection.

Contrary to the dissent's argument, this is not a determina-

tion that plaintiff's evidence is worthy of belief and defendants' is not. Rather, we conclude that defendants' evidence does not raise an issue of fact whether the harnesses, even if present, were adequate safety devices. Plaintiff's expert opined that the accident would not have occurred if plaintiff had been provided with a 5,000-pound anchorage point. Bovis's site safety plan and plaintiff's fact witnesses supported her conclusion. In response, defendants failed to come forward with evidence to rebut plaintiff's expert's conclusion, as they were bound to do in order to create an issue of fact under well-settled principles of summary judgment. Notably, in none of the affidavits did defendants' witnesses indicate that there was an adequate 5,000-pound anchorage point available to plaintiff while he was performing the work in question. This is information that is available to defendants, if it exists, and that they would be expected to provide in response to a motion for summary judgment.

Defendants' fact witnesses were not familiar with the specifics of the 39th floor and did not testify that the objects they suggested as anchor points had sufficient weight-bearing capability to have been useful. Significantly, defendant's expert failed to take issue either with plaintiff's expert opinion that an appropriate anchorage point must be capable of holding 5,000 pounds or that there was no such anchorage point on the 39th floor. Further, although Edelson stated that workers were instructed to tie off to the column rebars, he did not opine as to whether that procedure would have provided adequate protection for a falling worker.

In the absence of some proof that a harness, if provided, would have actually furnished adequate protection, defendants failed to raise an issue of fact whether plaintiff's actions were the sole proximate cause of his injuries. Concur—Lippman, P.J., Williams and Catterson, JJ.

Marlow and Gonzalez, JJ., dissent in a memorandum by Gonzalez, J., as follows: Because the record includes conflicting evidence regarding whether plaintiff was provided with adequate safety devices at the work site, yet failed to use them, a triable issue of fact has been raised whether plaintiff's conduct was the sole proximate cause of his injuries (*see Robinson v East Med. Ctr., LP*, 6 NY3d 550, 554 [2006]). Accordingly, I respectfully dissent from the majority's holding affirming the grant of summary judgment to plaintiff as to liability on his Labor Law § 240 (1) claim.

Plaintiff was injured while employed as a journeyman carpenter by nonparty Sorbara Construction on the 39th floor of the AOL/Time Warner building. His job was to place clamps

on wooden perimeter columns, known as "forms," in order to secure them before concrete was poured into each one. The job required that plaintiff and a coworker install clamps at 10- to 16-inch intervals, all the way up to the top of the form. When it became necessary to install a clamp that was too high on the form to reach, plaintiff and his coworker would stand on the lower clamps already installed to perform the work. About halfway up the column, when they were eight feet above the floor and standing on clamps, plaintiff reached around the form to hand his coworker the clamp and fell approximately five floors, sustaining injuries.

After commencing this action, plaintiff moved for summary judgment on the issue of liability on his Labor Law § 240 (1) claim. Plaintiff submitted his own deposition testimony, in which he alleged that he was not provided with any protective devices to prevent him from falling and that he did not attend any safety meetings and was not provided with any safety manuals or other written instructions as to how to perform his work. Plaintiff's coworker testified that there were no adequate safety devices provided in the area in which they were working, and another employee testified that the carpenters involved in clamping routinely did not use harnesses because they interfered with the job. Plaintiff also submitted an affidavit by an expert who averred that the conditions under which plaintiff was working were unsafe and contrary to accepted safety practices. She stated that plaintiff was not provided with a ladder, scaffold or netting, and that, in any event, there was no "appropriate anchorage point" in the area of plaintiff's work to which any of these devices could be attached.

In opposition, defendants submitted affidavits from a Sorbara site safety manager, two carpenter foremen, a laborer and a superintendent, all of whom worked on the AOL/Time Warner project and asserted that adequate safety devices and instructions were provided to all Sorbara employees working on the project. Specifically, the site manager's affidavit asserted that, "before his accident, [plaintiff] was issued his own fall protection devices, which included a harness, a lanyard and a safety strap system along with specific instructions on how to use them effectively when clamping perimeter columns." In addition, the site manager stated that "[u]pon receiving an assignment calling for the clamping of a perimeter column, [plaintiff] was instructed to wear his fall protection devices and to tie them off to secured hooks located on interior columns, to steel cables placed between poured columns or to steel rebars located at the floor deck."

In the order appealed from, the motion court granted plaintiff's motion for summary judgment, ruling that plaintiff had met his initial burden of showing an absence of safety devices and instructions, and that the site manager's affidavit failed to raise a triable issue because "it fails to set forth the affiant's basis of knowledge; that is, the affiant fails to set forth that the plaintiff intentionally failed to attend a mandatory safety meeting or that plaintiff was observed receiving safety equipment."

In my view, the site manager's affidavit and the additional affidavits submitted were sufficient to create a factual dispute as to whether adequate safety devices were provided to plaintiff and whether he deliberately chose not to use them. While the affidavit could have provided more detail as to when and by whom the safety equipment was given to plaintiff, the absence of these evidentiary details does not render the affidavit conclusory. The statements therein are still clear and unequivocal sworn assertions of fact that plaintiff was given a harness by Sorbara and instructed as to when to use it; that other safety devices were available at the work site; and that the carpenters were reminded at weekly safety meetings as to how to use such devices. Whether these statements are true or not, or, as plaintiff suggests, are based on unwarranted assumptions, is not a proper question for the motion court or this Court to decide. Indeed, it is inappropriate for the motion court or this Court to simply discount the site manager's statements because the affiant did not disclose the basis for his knowledge.

In addition, the affidavits submitted from the other Sorbara employees support many of the averments in the site manager's affidavit. For instance, one carpenter foreman submitted an affidavit stating that "[a]ll Sorbara employees performing work at an elevated height—such as clamping perimeter columns—were required to wear proper fall protection devices," and that "ladders and scaffolds were present on each floor of the building and all carpenters were instructed to use them to perform work at elevated height."

Another foreman's affidavit stated that "all Sorbara employees had access to fall safety protection devices in good working condition and were instructed to use them when they performed work at elevated heights." This foreman's affidavit further stated that both Bovis and Sorbara conducted "weekly safety meetings," during which Sorbara "emphasized the importance of wearing harnesses and lanyards and to tie them off securely when performing clamping of perimeter columns."

A third affidavit was provided by a Sorbara laborer who

observed plaintiff's fall, which stated that "all Sorbara employees had access to personal fall safety protection devices that were in good working condition, and were reminded to use them when they performed work at elevated heights. This includes harnesses and lanyards, as well as ladders and scaffolds."

Taken together, these affidavits directly contradict plaintiff's and his coworkers' deposition testimony that they were given no safety devices and were never instructed as to when and how to use them. The lack of evidentiary detail in the affidavits is not a proper basis for disregarding them, especially since they are all consistent with one another. A trial is required to resolve the issue.

The majority erroneously finds no triable issue on the ground that, even if adequate safety devices were provided to plaintiff, defendants are still liable under section 240 (1) because, as plaintiff's expert opined, those devices were inadequate under the circumstances since there was no sufficient anchorage point to which they could be attached. Rebutting the opinion of plaintiff's expert, both Sorbara foremen stated in their affidavits that there were many appropriate places for plaintiff to "tie off" while clamping the perimeter columns, and that if he had tied off in this manner, he would not have fallen. While these statements also lack detail, so too did the statement of plaintiff's expert, who simply stated that "[d]efendants had a non-delegable duty to provide [plaintiff] with personal fall protection including an appropriately 5,000 pound tested anchorage point." Obviously, plaintiff's expert was not present at the scene of the accident, and her opinion that there was no appropriately tested anchorage point appears to be nothing more than speculation. In short, the majority's position boils down to nothing more than that plaintiff's evidence should be believed and defendant's discredited, a position completely at odds with our summary judgment jurisprudence.

The majority's reference to the site safety plan and plaintiff's fact witnesses misses the point. That such plan required a 5,000 pound anchorage point, and that plaintiff's witnesses testified that no such point was available, does not end the matter, where defendant's affidavits directly state that specific and adequate anchorage points were available.

Accordingly, because the issues whether plaintiff was provided with adequate safety devices and whether he was instructed in how to use them cannot be determined as a matter of law, plaintiff's motion for summary judgment on liability on its Labor Law § 240 (1) should have been denied. [*See* 2007 NY Slip Op 31013(U).]