Quinones v Olmstead Props., Inc. (2015 NY Slip Op 07571)





Quinones v Olmstead Props., Inc.


2015 NY Slip Op 07571


Decided on October 15, 2015


Appellate Division, First Department


Andrias, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 15, 2015
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Angela Mazzarelli, J.P.
John W. Sweeny, Jr.
Richard T. Andrias
David B. Saxe
Rosalyn H. Richter, JJ.


100115/12 15431 

[*1]Pedro Quinones, Plaintiff-Respondent, —
v
Olmstead Properties, Inc., et al., Defendants, Fuel Outdoor, LLC, Defendant-Appellant.



Defendant Fuel Outdoor, LLC appeals from the order of the
Supreme Court, New York County (Joan M. Kenney, J.), entered November 26, 2013, which, to the extent appealed from, granted plaintiff's motion for partial summary judgment on his Labor Law § 240(1) claim as against defendant Fuel Outdoor, LLC.




Bartlett McDonough & Monaghan, LLP, White Plains (David C. Zegarelli of counsel), for appellant.
Arye, Lustig & Sassower, P.C., New York (Mitchell J. Sassower of counsel), for respondent.



ANDRIAS, J.


Plaintiff should not have been granted partial summary judgment on his Labor Law § 240(1) claim.
Plaintiff, an employee of North Shore Neon Sign (Neon), was injured while painting over graffiti on a billboard leased by defendant Fuel Outdoor, LLC (Fuel). The billboard was located inside a fenced-in lot and had a row of blocks in front of it that served as counterweights to prevent it from tipping over.
According to plaintiff, while standing on a stack of three of the concrete blocks, he lost [*2]his balance as he reached up to loosen one of the straps that held the image to the billboard frame so he could paint underneath it. Although plaintiff had been given a truck equipped with a cherry picker arm that extended 80 feet, with controls inside a basket at the end of the arm that manipulated the arm's movement, a safety harness and lanyard, and two ladders (8-feet and 24-feet), he did not attempt to use any of these devices, choosing instead to use the blocks as a platform. Plaintiff maintains that he could not paint from inside the cherry picker basket because the concrete blocks and light fixtures in front of the billboard were in the way, that he took off his harness because there was no way for him to "tie off" by attaching it to the structure, and that the ladders could not be used due to the configuration of the site and because no one was with him to "foot" the 24-foot ladder.
To prevail on a Labor Law § 240(1) claim, a plaintiff must establish that a violation of the statute, i.e., a failure to provide adequate protection against a risk arising from a physically significant elevation differential, was a proximate cause of his or her injuries (see Runner v New York Stock Exch., Inc., 13 NY3d 599, 603 [2009]; Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280, 287 [2003]). "[W]here a plaintiff's own actions are the sole proximate cause of the accident, there can be no liability" (Cahill v Triborough Bridge & Tunnel Auth., 4 NY3d 35, 39 [2004]). Furthermore,
"[t]o raise a triable issue of fact as to whether a plaintiff was the sole proximate cause of an accident, the defendant must produce evidence that adequate safety devices were available, that the plaintiff knew that they were available and was expected to use them, and that the plaintiff unreasonably chose not to do so, causing the injury sustained" (Nacewicz v Roman Catholic Church of the Holy Cross, 105 AD3d 402, 402-403 [1st Dept 2013]).
Here, the record includes conflicting evidence regarding whether plaintiff was provided with adequate safety devices but failed to use them, which raises a triable issue of fact whether his conduct was the sole proximate cause of his injuries (see Robinson v East Med. Ctr., LP, 6 NY3d 550, 554-555 [2006]). Unlike cases where a plaintiff was injured when he used his discretion to choose one of several safety devices provided and that device proved inadequate, in this case plaintiff was supplied with four safety devices and chose not to use any of them, electing instead to go straight to the concrete blocks, whose intended purpose was to act as a counterweight, not as a platform.
The dissent finds that defendant Fuel's submissions did not controvert plaintiff's evidence that the cherry picker and ladders were inadequate due to the configuration of the work site. The dissent also finds that defendant failed to submit any admissible evidence that the billboard itself, or any of its components, were safe or provided appropriate anchorage sites for plaintiff's harness lanyard. However, as to plaintiff's testimony that he could not paint from the bucket, James Taggart, vice president at Fuel, testified that in the past he had seen a Neon worker changing the sign's copy using a boom truck with a cherry picker that had been parked on the street outside the fence. As to plaintiff's claim that the lanyard could not be tied off, Fuel's expert stated that
"there were numerous locations on the billboard and its frame where the plaintiff could have tied off, including but not limited to the tubing and piping out of which the billboard frame was constructed, the pieces of kindorf from which the billboard lights were supported and the straps on the face of the billboard."
Thus, an issue exists as to whether safe alternative means of painting the billboard were available to plaintiff and whether his failure to use those means was the sole proximate cause of his accident (see Harris v Hueber-Breuer Constr. Co., Inc., 67 AD3d 1351 [4th Dept 2009]).
Accordingly, the order of the Supreme Court, New York County (Joan M. Kenney, J.), entered November 26, 2013, which, to the extent appealed from, granted plaintiff's motion for partial summary judgment on his Labor Law § 240(1) claim as against defendant Fuel Outdoor, LLC, should be reversed, on the law, without costs, and the motion denied.
All concur except Mazzarelli, J.P. and Richter, J. who dissent in an Opinion by Mazzarelli, J.P.




MAZZARELLI, J.P. (dissenting)


Plaintiff, an electrician by trade, was injured while painting over graffiti on a billboard that was located inside a fenced-in, vacant lot. The billboard was leased from the property owner by defendant Fuel Outdoor, LLC. Plaintiff was employed by nonparty North Shore Neon Sign Co., Inc. (Neon). The area of the billboard's apron where the graffiti was located was approximately 12 or 13 feet from the ground. The billboard had no catwalks or guardrails that would permit a worker to safely work on it. Plaintiff testified that he had the following devices available to him when he arrived at the site: a cherry picker attached to the truck he used to gain access to the lot, a 24-foot extension ladder, an 8-foot A-frame ladder, and a safety harness. However, he further testified that none of those devices would permit him to safely perform the work. The cherry picker could reach a height of 85 feet, but plaintiff stated that the area of the billboard he needed to reach, which was fronted by concrete blocks and flood lights, was too far from the place where he could position the basket. He explained that he could not position either ladder close enough to the billboard because of the concrete blocks, and that the only way he could have positioned the extension ladder would have left him above the spot that needed to be painted. Further, there was no other worker with him who could have "footed" the ladder. Finally, plaintiff testified that the safety harness he had was useless because there was no place on the billboard or the structure supporting the billboard to which he could have tied off a safety rope.
Plaintiff determined that the only way to perform the job was to climb on top of the concrete blocks to paint the billboard. The blocks had apparently been placed there as a counterweight for the structure holding the billboard. The blocks were approximately 2 1/2 feet deep, and were stacked so that they reached very close to the base of the billboard apron. Plaintiff began painting the billboard using a roller attached to a five-foot-long stick. After about 10 to 15 minutes, he had made his way from the far right to the center of the billboard, and was then standing on a stack of three concrete blocks. While reaching up to loosen one of the straps holding the image to the billboard frame, so that he could paint underneath it, plaintiff lost his balance and fell backwards to the ground.
Plaintiff testified that he had been trained in fall protection through his union, which sent him to a 10-hour OSHA course, and that he knew to tie off when at risk of a fall. The harness he had that day had a lanyard, and was in good condition. The A-frame and extension ladders in the truck were also in good working order, as was the truck itself.
James Taggart, vice president at Fuel, testified at a deposition that the billboard had been physically constructed by Neon. Neon was also the contractor that changed the copy displayed on the billboard's sign. Taggart had seen a Neon worker changing the sign's copy using a boom truck with a cherry picker. The truck had been parked outside the chain link fence, and the worker had performed his work from inside the basket. Taggart received a complaint that the Fuel billboard had been tagged with graffiti, so he contacted Neon to have the sign painted. He stated that he did not have any understanding as to how Neon would paint over the graffiti, he gave Neon no instructions, and he made no evaluation as to whether there was a safe place from which a painter could work.
Plaintiff moved for summary judgment on his claim pursuant to Labor Law § 240(1). In support he provided an expert affidavit by a certified safety executive. The expert averred that [*3]plaintiff was "not provided with Fall Protection which was so constructed, placed and operated as to give proper protection,'" such as a proper walkway/catwalk with safety rails, or other passive fall protection system. The expert further averred that, while plaintiff was provided with an active fall protection system, i.e., the harness and lanyard, that device was not appropriate for the situation because there were no designated anchorage or tie-off points, and the fall distance was such that plaintiff would have hit the ground before the system engaged. The expert also stated that the cherry picker was not proper protection, because it did not allow plaintiff to properly access the work area, the A-frame ladder could not be used due to the presence of the concrete blocks, and the extension ladder required a second worker to secure the ladder at the bottom.
In opposition, Fuel argued that plaintiff was the sole proximate cause of the accident, since he decided not to use any of the multiple safety devices provided to him. It too provided an affidavit by an expert, a professional engineer, who opined that any of the safety devices available to plaintiff would have prevented his fall. With respect to the safety harness, he stated that
"there were numerous locations on the billboard and its frame where the plaintiff could have tied off, including but not limited to the tubing and piping out of which the billboard frame was constructed, the pieces of kindorf from which the billboard lights were supported and the straps on the face of the billboard."
Plaintiff submitted a reply affidavit by his expert, who observed that Fuel's expert did not state precisely what plaintiff should have tied onto, whether the suggested general locations were appropriate, given the free fall distances implicated, and whether, in any event, the proposed tie-off locations were capable of safely supporting plaintiff's weight.
The motion court granted plaintiff's motion for partial summary judgment pursuant to Labor Law § 240(1), on the grounds that plaintiff was engaged in an elevation-related risk and was injured because of the failure of a safety device. The court found Fuel's argument that plaintiff was the sole proximate cause of his accident unpersuasive since there was "no evidence in this case to demonstrate that plaintiff was provided with the kinds of safety devices which could be utilized under the particular circumstances facing plaintiff." Regarding Fuel's expert's statement that plaintiff could have tied off on the billboard components, the court observed that there was no proof in the record that the suggested locations were strong enough to support plaintiff.
A plaintiff demonstrates his entitlement to summary judgment on a claim under Labor Law § 240(1) when he establishes that the statute was violated and that the violation was a proximate cause of his injuries (see Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280, 289 [2003]). However, if adequate safety devices are provided and the worker either chooses, without justification, not to use them, or misuses them, then the defendant is not liable under § 240(1) (see Gallagher v New York Post, 14 NY3d 83 [2010]; Robinson v East Med. Ctr., LP, 6 NY3d 550 [2006]; Cahill v Triborough Bridge & Tunnel Auth., 4 NY3d 35 [2004]).
A safety device need not be inherently defective to be deemed inadequate. So long as the device is not suited to the task at hand, it is not adequate for purposes of Labor Law § 240(1) (see Felker v Corning Inc., 90 NY2d 219 [1997]). In Felker, the plaintiff, a painter, was provided with a functioning ladder. However, he needed to reach out over a height in order to complete the task of painting an alcove wall. Since the ladder was insufficient to protect the plaintiff from the risk of having to reach out over the alcove, the Court of Appeals found that no device had been provided to protect against that risk (see also Alonzo v Safe Harbors of the Hudson Hous. Dev. Fund Co., Inc., 104 AD3d 446, 449-450 [1st Dept 2013] [plywood cover over hole was inadequate to protect workers from falling through]; Hernandez v Argo Corp., 95 AD3d 782 [1st Dept 2012] [scaffold that required workers to travel across an unguarded gap of three feet was [*4]inadequate]).
Here, plaintiff made a prima facie showing that none of the devices furnished to him were adequate to the task at hand. He testified that neither the A-frame ladder nor the extension ladder could have been used due to the presence of the concrete blocks at the base of the sign, and Fuel offered no evidence to the contrary. Fuel's expert stated in only a bare, conclusory fashion that the ladders were adequate for plaintiff to perform his work. Further, even if, as Fuel argues he should have, plaintiff had called the office to ask for someone to be sent to foot the ladder, the helper would not have constituted an adequate safety device (see McCarthy v Turner Constr. Inc., 52 AD3d 333 [1st Dept 2008]).
Fuel also failed to raise an issue of fact as to whether plaintiff's failure to use the cherry picker made him the sole proximate cause of the accident. Plaintiff's testimony that the basket could not have reached the appropriate angle to make the painting feasible was unrebutted by Fuel. To be sure, as the majority points out, Taggart, Fuel's witness, testified that he had seen, on more than one occasion, a worker changing the advertising copy on the billboard from a cherry picker. However, the majority fails to account for the absence of evidence that the cherry picker that was available to plaintiff was the same or similar to the lifts that Taggart saw being used. Moreover, the majority ignores that Fuel did nothing to obviate the likely fact that changing copy is a substantially different task from, and requires different positioning than, painting over a small section of graffiti at the bottom of the billboard apron. Indeed, Taggart testified that he had never seen a worker painting on the billboard face. Further, Fuel's expert did not explain how plaintiff could have safely employed the cherry picker to reach the section of the billboard where the graffiti was located.
Plaintiff also established prima facie that the safety harness was inadequate because there was nothing that he felt would safely hold the weight of his body if he tied off to it. I disagree with the majority that Fuel's expert's barebones statement that "there were numerous locations on the billboard and its frame where the plaintiff could have tied off" created an issue of fact. It was insufficient for the expert to merely itemize the things to which plaintiff could have attached his safety harness. Rather, the expert was required to state, for each of those things, that it had the physical properties necessary to support plaintiff's weight if he fell, and to set forth the steps that he took on his site visit to reach that conclusion (see Miglionico v Bovis Lend Lease, Inc., 47 AD3d 561, 565 [1st Dept 2008]; Cordeiro v TS Midtown Holdings, LLC, 87 AD3d 904 [1st Dept 2011]). Further, the expert failed to address at all plaintiff's expert's opinion that, in any event, the fall distance was such that plaintiff would have hit the ground before the safety harness and rope system engaged.
Because Fuel was required to offer more than the barebones and conclusory statements it submitted as to how the four devices available to plaintiff could have prevented the accident, it [*5]failed to raise an issue of fact as to whether plaintiff was the sole proximate cause. Accordingly, I would affirm the grant of partial summary judgment to plaintiff on his claim pursuant to Labor Law § 240(1).
Order, Supreme Court, New York County (Joan M. Kenney, J.), entered November 26, 2013, reversed, on the law, without costs, and the motion denied.
Opinion by Andrias, J. All concur except Mazzarelli J.P. and Richter J. who dissent in an Opinion by Mazzarelli, J.P.
Mazzarelli, J.P., Sweeny, Andrias, Saxe, Richter, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: OCTOBER 15, 2015
CLERK